Anthony **EDWARDS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 06–96–00064–CR.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 23, 1997.

Decided Oct. 24, 1997.

---

George Valton Jones, Marshall, for appellant.

Todd E. Fitts, Asst. District Attorney, Marshall, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Anthony Edwards appeals from his conviction of capital murder following a jury trial. The jury assessed punishment at life imprisonment, pursuant to TEX. PENAL CODE ANN. § 12.31 (Vernon 1994).

Edwards contends that his conviction should be reversed because (1) his oral confession to police was involuntary, and (2) the evidence is factually insufficient to support the verdict.

### Background

Anthony Edwards and two companions, his brother (Mervin Edwards) and Dean Walker, left Bossier City, Louisiana, and drove to Marshall, Texas. The men approached James and Charlotte Carroll in the parking lot of a bowling alley in Marshall. Walker attacked James Carroll, and one of the other men asked Charlotte Carroll how much money she had in her purse. Charlotte Carroll threw her purse, which also contained her jewelry, at her assailant and ran away, taking cover behind another vehicle in the parking lot. While James Carroll was defending

himself against his attacker, Mervin Edwards shot him in the chest with a shotgun. Charlotte Carroll heard the shot, but did not see which assailant fired on her husband. James Carroll died as a result of his wounds. Anthony was later arrested and gave a confession to police describing his involvement in the crime.

## I.

### Voluntariness of the Confession

Anthony argues that the confession used against him at trial was not voluntary. He asserts that the confession was taken in violation of his right to remain silent and that Julie Ruffin, Anthony's girlfriend, was used by the State as an agent in further violation of his right to remain silent. When determining the voluntariness of a confession, this Court must view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling and must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex. Crim.App.1996).

Anthony was arrested pursuant to a warrant. Following the arrest, Anthony was informed of his *Miranda*[1] rights and questioned by police. The interview began at approximately 4:20 p.m. When questioned, Anthony denied any involvement or knowledge of the robbery of James and Charlotte Carroll or the murder of James Carroll. The police terminated the interview after approximately ten minutes.

Ruffin was at the police station and asked to speak with Anthony after the initial police interview. The conversation between Anthony and Ruffin lasted thirty-five to forty minutes. The police could see them talking in the interview room, but could not hear their conversation.

Following Ruffin's departure, Anthony motioned for the police to come back into the interview room. The police re-entered the interview room at 5:25 p.m., again read An-

thony his *Miranda* rights, and then took a taped statement from him in which Anthony admitted his involvement in the robbery and murder.

Before trial, Anthony filed a motion to suppress the confession. The trial court held a *Jackson v. Denno*[2] hearing and overruled the motion to suppress. The trial court filed findings of fact and conclusions of law which held Anthony's confession to be voluntary. The trial court found that Anthony had been properly advised of his *Miranda* rights, that he understood them, and that he voluntarily waived those rights.

### A. Invocation of the Right to Silence

It is undisputed that the statement given by Anthony was governed by *Miranda* requirements. Anthony asserts that he invoked his right to silence during the initial ten minute interview with the police by denying any involvement or knowledge of the events surrounding James and Charlotte Carroll.

■ It is clear that when a suspect invokes his right to remain silent in the course of interrogation, questioning must stop. *Michigan v. Mosley,* 423 U.S. 96, 100, 96 S.Ct. 321, 325, 46 L.Ed.2d 313, 319 (1975). However, in this case, the threshold issue is whether or not Anthony invoked his right to silence. There is no magic word or phrase with which to invoke the right to remain silent. *Miranda* makes clear that the interrogation must cease when the person in custody "indicates in any manner" that he wishes to remain silent. *Watson v. State,* 762 S.W.2d 591, 597 (Tex.Crim.App.1988) (citing *Michigan v. Mosley* ).

■ Denials of involvement in response to questioning do not constitute the invocation of the right to silence. *West v. State,* 720 S.W.2d 511, 518 (Tex.Crim.App.1986). The record fails to show that Anthony invoked his right to silence in any other way. Therefore, he did not invoke his right to silence during the course of his first interview with police. Even if Anthony did in-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

voke his right to silence, the police honored this right by ceasing their initial interrogation after only ten minutes of questioning. The police did not resume questioning until Anthony reinitiated contact.

■ The confession admitted into evidence at trial was a product of Anthony's second interview with police. This interview was initiated by Anthony after his discussion with Ruffin. The police also administered *Miranda* warnings at the start of this interview, which Anthony waived.

■ The determining factor in deciding whether an accused's rights have been violated is the presence of police coercion. *Colorado v. Connelly*, 479 U.S. 157, 163–64, 107 S.Ct. 515, 519–20, 93 L.Ed.2d 473, 482 (1986). Since the second interview was initiated by Anthony, there is no indication of police coercion absent the appellant making a new invocation of his rights. The record is devoid of evidence indicating that Anthony invoked his right to silence during the second interview. We find that the appellant's right to silence was not violated during the first or second interview with police.

### B. Ruffin as an Agent of the State

■ Anthony asserts that Ruffin was acting as the State's agent during her conversation with him. He further asserts that, due to Ruffin's agency status, this conversation also violated his invocation of his right to silence.

■ In deciding whether a non-law enforcement questioner is acting as an agent of law enforcement, the record as a whole must clearly establish that the appellant's statements resulted from a calculated practice which all agents of the State involved knew was reasonably likely to evoke an incriminating response. *McCrory v. State*, 643 S.W.2d 725, 726 n. 2., 734–35 (Tex.Crim.App.1982). The record must establish that when the appellant made the admissions, the police were utilizing an agent so as to accomplish

what the police could not have lawfully accomplished themselves. *Cates v. State*, 776 S.W.2d 170, 172 (Tex.Crim.App.1989). An individual's action will not be attributed to the State if no promises are made for that individual's help and if nothing was offered to or asked of that individual. *State v. Hernandez*, 842 S.W.2d 306, 315–16 (Tex.App.—San Antonio 1992, pet. ref'd).

Since we find that Anthony never asserted his right to silence, this right was not violated by his conversation with Ruffin. Nevertheless, even if Anthony had invoked his right to silence, his conversation with Ruffin did not violate this invocation. At the conclusion of the first interview with police, Anthony was informed that Ruffin had requested to speak with him. Anthony agreed to see her. During the motion to suppress hearing, Anthony testified that, during his conversation with Ruffin at the police station, she told him she had talked with the police and that they told her Anthony would likely be treated more leniently if he cooperated with the police. Anthony also testified that he and Ruffin discussed other matters aside from the reason for his arrest.

Ruffin initiated the conversation with Anthony on her own volition. There is no evidence in the record that Ruffin initiated the conversation at the State's request. One of the police officers present testified that the police did not ask Ruffin to make any promises to Anthony or do any other action on behalf of law enforcement which would lead Anthony to talk with law enforcement or incriminate himself. Aside from Anthony's testimony, there is no evidence in the record that the police and Ruffin were working together in such a way as to cause Anthony to incriminate himself. The record clearly establishes that Ruffin was not acting as an agent of the State and that she did not violate Anthony's constitutional rights by talking with him.[3]

Appellant's first point of error is overruled.

---

3. On direct examination, Ruffin testified that she initiated contact with the Marshall police and reported her knowledge of the crime, including the identity of the appellant. On cross-examination, she admitted that charges were pending against her at the time Anthony was arrested.

She testified that the charges were later dropped due to lack of evidence. She also testified that her motivation to come forward with her knowledge of the crime was to clear her conscience. Ruffin also received a payment from the Crime Stoppers program.

## II.

### Factual Sufficiency

When reviewing the factual sufficiency of the evidence, we review all of the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996).

▋▋▋ Anthony asserts that the State failed to produce evidence factually sufficient to show that he acted with the intent to promote or assist in the commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid the other person in its commission. TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994). A defendant may not be held accountable as a party without some indication that they knew they were assisting in the commission of an offense. *Amaya v. State*, 733 S.W.2d 168, 174 (Tex. Crim.App.1986). The evidence must show that at the time of the commission of the offense the parties were acting together, each doing some part of the execution of the common purpose. *Brooks v. State*, 580 S.W.2d 825, 831 (Tex.Crim.App. [Panel Op.] 1979). Evidence is sufficient to support a conviction under the law of parties where the actor is physically present and encourages the commission of the offense, either by words or agreement. *Cordova v. State*, 698 S.W.2d 107, 111 (Tex.Crim.App.1985). In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to commit the offense. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex.Crim.App.1986).

Anthony relies on exculpatory statements he made in his confession to support his contention of factual insufficiency. He did not testify at trial. In his confession, Anthony states that when they were in the car on the way to Marshall, he thought the three men were simply going to Marshall to "chill ... and just mingle with some girls." He also said that Walker and Mervin, his companions, wanted to "hit up" someone for money, but he did not want to go along with such a plan. Anthony knew there was a gun in the trunk of the car, and he claims that Mervin went along with the robbery plans on the condition that he, Mervin, got to hold the gun. Anthony also stated that he "had no idea that this man [James Carroll] was going to get shot." When the three men arrived at the bowling alley, Anthony stated that they asked someone in the parking lot if it was closed and were told that it was. The three men continued to drive around in the parking lot and spotted James and Charlotte Carroll. Anthony confessed to standing in the parking lot as Mervin and Walker robbed Charlotte Carroll and assaulted and murdered James Carroll. He denies taking an active role. After the shooting, Anthony said he ran down the street and was later picked up by Mervin and Walker in the car as they left the scene.

Anthony argues to this Court that he was sitting in the back seat of the car the entire time the robbery and murder were taking place, and that he had no idea his brother had a gun in the trunk of the car. This argument is inconsistent with his confession as set out in the record.

Charlotte Carroll testified at the trial that three black men jumped out from behind a vehicle and approached her and her husband in the parking lot of the bowling alley. One of the men asked her how much money she had in her purse, the other was holding a gun, and the third man approached her husband. Charlotte Carroll threw her purse at her assailant and ran. She could not positively identify Anthony as one of the assailants. She did identify one of the items recovered by police from a pawn shop as her wedding ring.

Mae Ausbrooks, an employee of the bowling alley, testified that on the night of the incident she was sitting in the parking lot after the bowling alley had closed talking with another person. She testified that three young black men pulled up beside her and the driver asked her if the bowling alley was closed. She told them it was. The car pulled away, and she testified that she thought they had left. She could not identify Anthony as one of the persons in the car.

Ruffin testified that she overheard a conversation between Anthony and his brother Mervin early in the evening on the night of the incident. They were at her home in Bossier City and were discussing coming to Texas to do a "job." Ruffin testified that a "job" meant a robbery. She said that she knew this because the term had been used in discussions before this incident. She also testified that Anthony and Mervin left at dusk and returned around midnight. Upon return, when Anthony came through the door, he was carrying a purse and some jewelry. Ruffin heard about a robbery and murder in Marshall on the news the next morning and confronted Anthony about the events of the previous evening. He admitted grabbing the purse and running. Ruffin also testified that she went with Anthony and a third person to pawn the items taken in the robbery. She testified that the third person pawned the items and gave Anthony the proceeds.

Although Anthony contends that his confession shows that he did not act with the intent to assist or encourage the offense, considering the other evidence in the record, we cannot conclude that the jury's verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.