NO. 07-03-0218-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



NOVEMBER 30, 2004


______________________________



DEANNA SHEPHERD, 



 Appellant

v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 159TH DISTRICT COURT OF ANGELINA COUNTY;



NO. 22,688; HON. PAUL E. WHITE, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

 Appellant, Deanna Shepherd, appeals her conviction for capital murder through five
issues. She argues that 1) the evidence is legally insufficient to support her conviction, 2)
the evidence is factually insufficient to support her conviction, 3) the trial court erred in
admitting evidence of an extraneous offense, 4) the trial court erred in admitting the
hearsay statement of a minor child, and 5) the trial court erred in admitting four
photographs into evidence. We affirm the judgment of the trial court.

 

Background


 Appellant was residing in a house owned by her father in Angelina County along 
with her two children and with Daniel Pugh, her boyfriend. Appellant and Pugh had been
a couple for several months, and appellant had quit her job around the same time they got
together. She was writing hot checks to support her boyfriend and children. Several
weeks prior to his murder, appellant's neighbor, Fant Smart, had been robbed of several
personal items from his house including some guns. The perpetrators of that offense were
Daniel Pugh and two friends of his friends, Nathan Snider and David Yount. Yet, appellant
later possessed and or fired at least one of the weapons taken in that robbery. 

 On January 6, 2001, Pugh went back to Smart's residence several times to look for
more items. During one of those trips, Smart entered his home, was bound and beaten,
and then shot seven times with two different guns. Appellant denied being present while
the burglary, beating, and shooting occurred. Yet, her child had informed the police that
her mother had been at Smart's house with Pugh when shots were heard. So too did
appellant inform her cellmate (after her arrest) that "we" were in the house when the home
owner returned unexpectedly.

 After the killing, appellant and Pugh cleaned up the house, loaded Smart's body into
Smart's pickup truck, set fire to Smart's house, loaded her two children in the truck, and
drove around with the body in the bed of it. The body was eventually dropped into
Tantabogue Creek in Trinity County with the help of Nathan Snider. 

 The next day, appellant left her two children with her ex-husband. She and Pugh
then traveled to Florida, back through Oklahoma, and eventually to Canyon, Texas, to
meet a friend of Pugh's. However, the friend had notified authorities in Randall County that
he had been contacted by Pugh, and the authorities attempted to stop them. Before they
could do so, Pugh committed suicide by shooting himself in the head. Appellant was
arrested, tried, and convicted of capital murder. 

Issues One and Two - Sufficiency of the Evidence


 In her first two issues, appellant challenges the legal and factual sufficiency of the
evidence to support her participation or agreement to commit either burglary or murder. 
We overrule the issues.

 The standards by which we review legal and factual sufficiency are well established. 
We refer the parties to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979), Sims v. State, 99 S.W.3d 600 (Tex. Crim. App. 2003), Zuliani v. State, 97 S.W.3d
589 (Tex. Crim. App. 2003), and King v. State, 29 S.W.3d 556 (Tex. Crim. App. 2000) for
an explanation of the standards. 

 Appellant was charged in the indictment with intentionally causing the death of Fant
Smart by shooting him with a deadly weapon while in the course of committing or
attempting to commit the offense of burglary of the habitation of Fant Smart. The charge
allowed the jury to convict appellant either 1) by acting with intent to promote or assist the
commission of the offense and soliciting, encouraging, directing, aiding, or attempting to
aid another person to commit the offense or 2) by committing one felony while attempting
to carry out a conspiracy to commit another felony if the offense was committed in
furtherance of the unlawful purpose and should have been anticipated. See Tex. Pen.
Code Ann. §7.02 (Vernon 2003). Appellant argues that there was no evidence that anyone
other than Pugh entered the house with intent to commit a burglary of the home of Fant
Smart or that anyone else was in the house when Pugh shot and killed Smart. Thus, there
was no evidence of any form of agreement to commit one felony. 

 To be convicted as a party to an offense, there must be evidence showing that at
the time of the offense, the parties were acting together with each contributing some part
towards the execution of their common purpose. Wooden v. State, 101 S.W.3d 542, 546
(Tex. App.-Fort Worth 2003, pet. ref'd); Edwards v. State, 956 S.W.2d 687, 690 (Tex.
App.-Texarkana 1997, no pet.). The agreement, whether explicit or implicit, must have
been made before or contemporaneously with the offense. Barnes v. State, 62 S.W.3d
288, 296 (Tex. App.-Austin 2001, pet. ref'd). In determining the guilt of a defendant as a
party, the factfinder may look to events occurring before, during, and after commission of
the crime, Goff v. State, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996), cert. denied, 520
U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997), and participation as a party may be
inferred from circumstantial evidence. Gant v. State, 116 S.W.3d 124, 133 (Tex. App.-
Tyler 2003, pet. ref'd); Green v. State, 839 S.W.2d 935, 944 (Tex. App.-Waco 1992, pet.
ref'd); Hill v. State, 883 S.W.2d 765, 770 (Tex. App.-Amarillo 1994, pet. ref'd). Moreover,
the cumulative force of all the incriminating evidence may be sufficient to warrant a
conclusion of guilt. Thomas v. State, 915 S.W.2d 597, 600 (Tex. App.-Houston [14th Dist.]
1996, pet. ref'd). However, one does not become an accomplice through mere knowledge
of a crime or the failure to disclose its commission. Stevens v. State, 820 S.W.2d 930, 934
(Tex. App.-Fort Worth 1991, pet. ref'd). 

 In this instance, appellant denied that she was present when Smart was killed or
that she participated in any burglary of his house. She did admit that she cleaned up after
the murder, helped to load the victim into his own pickup truck, drove around in the victim's
truck with the body in the bed of the truck, was present when the body was disposed of,
fled the state with Pugh, and used money stolen from the victim and pawned items stolen
from him. However, she claimed she did those acts because she was afraid of Pugh.

 Nevertheless, other evidence shows that 1) she and Pugh had previously talked of
committing a robbery and had actually done so near College Station, Texas, 2) she had
quit her job and was having to write hot checks to cover expenses, 3) she learned of the
first burglary of Smart's house soon after its occurrence, and practiced shooting the guns
that had been stolen in the burglary, 4) on January 6, appellant was told by Pugh that he
was going to Smart's house to see what was in it, and she "had an idea" he was going to
rob it, 5) after Pugh had been to Smart's house, he showed her money he had taken, they
counted out $250 in coins together, and hid it in her closet, 6) after doing so, Pugh told her
he was returning to Smart's house and she did not ask him to return the stolen property,
7) later she cleaned up blood from Smart's house, had the idea to put a blanket under the
body, returned to her own home several times while doing so to obtain cleaning materials
and check on her children, and helped load the body into the truck, 8) appellant did not try
to escape from Pugh although she had multiple opportunities to do so throughout the entire
ordeal, 9) appellant gave a detailed description to police as to how the crime occurred even
though she was allegedly not present, 10) appellant gave conflicting stories to the police
with respect to her involvement, 11) the body had bruising consistent with the victim having
been beaten before his death although that theory is inconsistent with appellant's version
that Smart was only shot when he unexpectedly came home, 12) Pugh told his friend in
Canyon, Texas, that "we were robbing a house and the guy walked in on us and [I] turned
around and shot him," 13) a cell mate testified that appellant told her "we were in the house
when the teacher came in and surprised 'em," and 14) appellant's own daughter told
officers that her mother was in the Smart house with Pugh when shots were heard. 
(Emphasis added). 

 From this evidence, a rational jury could have found, beyond reasonable doubt, that
appellant participated in the burglary and murder of Smart. Thus, the conviction enjoys the
support of legally sufficient evidence.

 That appellant presented exculpatory evidence and evidence indicating that Pugh
forced her to help clean the house after the murder did not obligate the jury to acquit her
of the charges. Indeed, evidence of guilt may often be circumstantial, contradicted, and
less than clear and unequivocal, such as that here. Yet, it is the task of the jury to
determine what and who to believe. And, the jury is free to disbelieve appellant's testimony
and evidence and believe that of the State. See Hanson v. State, 55 S.W.3d 681, 691-92
(Tex. App.-Austin 2001, pet. ref'd) (holding that the jury could disbelieve that the defendant
had told his companion that he was "not doing nothing" when there was evidence that he
had been told of a plan to rob the victim, carried a hammer which was one of the murder
weapons, washed off a knife after the murder, took items from the house, and left town). 
And, when the evidence is viewed as a whole, we cannot say that it greatly preponderates
against that supporting appellant's conviction. Nor can we conclude that the evidence of
appellant's guilt, when weighed against the other evidence of record was so weak as to
render the verdict manifestly unjust. Thus, the verdict also enjoys the support of factually
sufficient evidence. See Burdine v. State, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986),
cert. denied, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987) (holding that the
defendant exhibited a prior understanding that a crime would occur by stating he felt that
his co-actor "was going to start some trouble," the defendant suggested that they gag the
victim and take him to the back of the trailer, the defendant moved the truck to load the
stolen property, and after the murder, they traveled to another town, pawned a television,
used the victim's ATM card and fled to another state). 

Issue Three - Extraneous Offense


 In her third issue, appellant complains of the admission by the trial court of evidence
that she had previously committed an unadjudicated armed robbery with Pugh. We
overrule the issue.

 On rebuttal, the State attempted to introduce the testimony of 1) Norma Nichols,
who had resided with appellant and Pugh for a period of time, to the effect that she had
heard them plan a robbery and that they reported to her they had committed a robbery, 2)
an officer who interviewed appellant during which interview appellant admitted to
participating in an armed robbery in Brazos County, and 3) a Brazos County officer
regarding an aggravated robbery that took place within that county at that same time. The
State contended that the evidence was relevant to motive, intent, plan, knowledge, and
refutation of appellant's contention that she only participated in the current offense
because she was afraid of Pugh. Appellant objected to its admission on the basis of Rule
404(b) and Rule 403 of the Texas Rules of Evidence. The court overruled the objections
and admitted the evidence.

 We review the trial court's ruling on the admission of the evidence for abuse of
discretion. Montgomery v. State, 810 S.W.2d 377, 379 (Tex. Crim. App. 1991). And, so
long as the trial court's decision falls within the zone of reasonable disagreement, we
cannot say that it abused its discretion. Id. at 380.

 Next, evidence of an extraneous offense is relevant if it tends to establish some
elemental or evidentiary fact or rebuts a defensive theory. Brown v. State, 96 S.W.3d 508,
511 (Tex. App.-Austin 2002, no pet.); see also Moses v. State, 105 S.W.3d 622, 626 (Tex.
Crim. App. 2003) (holding that evidence may be admissible if it rebuts a defensive theory);
Tex. R. Evid. 404(b) (holding that evidence of other crimes, wrongs or acts is admissible
to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity or
absence of mistake or accident). 

 Appellant contended both in statements given to police and in her testimony at trial
that she did not know that Pugh was going to rob Smart and that she only helped him after
the murder because she feared Pugh. The evidence of her participation with Pugh in a
prior robbery not only illustrates that she worked in tandem with Pugh's criminal escapades
in the past but also that she did it quite voluntarily. Indeed, she herself admitted that she
waited outside of the convenience store in Brazos County to drive the couple away and
that while she waited she applied mascara to at least one eye. The nonchalance exhibited
while Pugh robbed the store tends to rebut any insinuation that she feared Pugh or was
otherwise coerced into engaging in his criminal escapades. Consequently, we cannot say
that any decision finding the evidence both relevant, an exception to Rule 404(b), and
admissible under Rule 403 was outside the zone of reasonable disagreement.

Issue Four - Hearsay Statement


 Appellant argues in her fourth issue that the trial court erred in admitting the hearsay
statement of her minor daughter. We overrule the issue.

 Prior to the offer of the hearsay statement, the six-year-old child testified that she 
had never heard gunshots when her mother was away from the house. This statement
differed from the statement given to a police officer and offered (at trial) through Officer
Jimmy Casper as a prior inconsistent statement of the child. Furthermore, in the prior
statement, the child disclosed that she had been in the house with her brother, became
concerned because she could not find her mother, stepped outside, heard gunshots, and
realized that her mother was still with Pugh at Smart's house.

 A prior inconsistent statement is not hearsay. Tex. R. Evid. 801(e)(1)(A). And, to
the extent that appellant contends before us that the State failed to comply with Texas Rule
of Evidence 613 (regarding the admission of prior inconsistent statements), that ground
went unmentioned below. So, because the objection below does not comport with that
uttered here, it is waived. Rodriguez v. State, 955 S.W.2d 171, 177 (Tex. App.-Amarillo
1997, no pet.). 

Issue Five - Photographs


 In her final issue, appellant claims the trial court erred in admitting, over her Rule
403 objection, four photographs of the deceased victim. We overrule the issue.

 Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. And, whether the trial
court erred in rejecting an objection founded upon Rule 403 depends upon whether it
abused its discretion, i.e. whether the decision falls outside the zone of reasonable
disagreement. This standard also applies to the admission of photographs. Wyatt v.
State, 23 S.W.3d 18, 29 (Tex. Crim. App. 2000). 

 Next, pictures are generally admissible if verbal testimony of the matters depicted
is also admissible, unless, of course, their probative value is outweighed by their prejudicial
effect. Ramirez v. State, 815 S.W.2d 636, 647 (Tex. Crim. App. 1991). Furthermore, the
trial court does not abuse its discretion in admitting photographs if they will help the jury
to understand verbal testimony, such as technical language used by a medical doctor in
describing injuries sustained. Hernandez v. State, 118 S.W.3d 469, 478 (Tex. App.-
Eastland 2003, pet. ref'd). 

 The four photographs in question were all 4" by 6" pictures of the victim showing the
wounds on his body. Appellant complains that Exhibit 35 shows the victim on a gurney
with his hands bound behind his back. Appellant also complains that Exhibits 39, 46, and
47 depict the victim's head while he is lying on a gurney. Yet, the pictures about which
appellant complains on appeal are not more gruesome than others depicting appellant on
the gurney and to which no complaint was made. See Youens v. State, 742 S.W.2d 855,
862 (Tex. App.-Beaumont 1997, pet. ref'd). Additionally, two of the pictures are of the
decedent's scalp and purport to depict scalp wounds. A trial court holding them to be of
minimal emotional impact or of minimal distaste would fall within the zone of reasonable
disagreement. That of the decedent lying with his arms tied depicts how the body was
found and the effort which must have been taken by those who murdered him to either kill
him or dispose of his body. And, the photo of the decedent's face depicts that he was
beaten, which tends to contradict the evidence that he was only shot. 

 The fact that the body is shown after it has been moved from the position in which
it was discovered does not render the photos inadmissible. See Purtell v. State, 761
S.W.2d 360, 371 (Tex. Crim. App. 1988) (holding that photographs showing the body after
having been moved from the position in which it was discovered were probative of the
manner in which the deceased was killed as well as the condition of the body and the
locations of the wounds). Moreover, photographs of murder victims may be admissible to
show the manner and means of death even if they merely corroborate other kinds of
evidence. Moreno v. State, 1 S.W.3d 846, 857 (Tex. App.-Corpus Christi 1999, pet. ref'd). 
Finally, that a relevant picture may be gruesome alone is not necessarily justification to
exclude it. Sonnier v. State, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995). Given this and
the propensity of the photos to not only evince the brutality of the crime but also the
manner in which it actually occurred, we cannot say that the trial court's decision to reject
Rule 403 as a basis to exclude them fell outside the zone of reasonable disagreement and
constituted an abuse of discretion.

 Accordingly, the judgment of the trial court is affirmed.


 Per Curiam


Do not publish.