NO. 07-03-0218-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 30, 2004

_____

DEANNA SHEPHERD,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 159TH DISTRICT COURT OF ANGELINA COUNTY;

NO. 22,688; HON. PAUL E. WHITE, PRESIDING

_____

*Memorandum Opinion*

_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

Appellant, Deanna Shepherd, appeals her conviction for capital murder through five issues. She argues that 1) the evidence is legally insufficient to support her conviction, 2) the evidence is factually insufficient to support her conviction, 3) the trial court erred in admitting evidence of an extraneous offense, 4) the trial court erred in admitting the hearsay statement of a minor child, and 5) the trial court erred in admitting four photographs into evidence. We affirm the judgment of the trial court.

### *Background*

Appellant was residing in a house owned by her father in Angelina County along with her two children and with Daniel Pugh, her boyfriend. Appellant and Pugh had been a couple for several months, and appellant had quit her job around the same time they got together. She was writing hot checks to support her boyfriend and children. Several weeks prior to his murder, appellant's neighbor, Fant Smart, had been robbed of several personal items from his house including some guns. The perpetrators of that offense were Daniel Pugh and two friends of his friends, Nathan Snider and David Yount. Yet, appellant later possessed and or fired at least one of the weapons taken in that robbery.

On January 6, 2001, Pugh went back to Smart's residence several times to look for more items. During one of those trips, Smart entered his home, was bound and beaten, and then shot seven times with two different guns. Appellant denied being present while the burglary, beating, and shooting occurred. Yet, her child had informed the police that her mother had been at Smart's house with Pugh when shots were heard. So too did appellant inform her cellmate (after her arrest) that "we" were in the house when the home owner returned unexpectedly.

After the killing, appellant and Pugh cleaned up the house, loaded Smart's body into Smart's pickup truck, set fire to Smart's house, loaded her two children in the truck, and drove around with the body in the bed of it. The body was eventually dropped into Tantabogue Creek in Trinity County with the help of Nathan Snider.

The next day, appellant left her two children with her ex-husband. She and Pugh then traveled to Florida, back through Oklahoma, and eventually to Canyon, Texas, to meet a friend of Pugh's. However, the friend had notified authorities in Randall County that

2

he had been contacted by Pugh, and the authorities attempted to stop them. Before they could do so, Pugh committed suicide by shooting himself in the head. Appellant was arrested, tried, and convicted of capital murder.

### Issues One and Two - Sufficiency of the Evidence

In her first two issues, appellant challenges the legal and factual sufficiency of the evidence to support her participation or agreement to commit either burglary or murder. We overrule the issues.

The standards by which we review legal and factual sufficiency are well established. We refer the parties to *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *Sims v. State,* 99 S.W.3d 600 (Tex. Crim. App. 2003), *Zuliani v. State,* 97 S.W.3d 589 (Tex. Crim. App. 2003), and *King v. State,* 29 S.W.3d 556 (Tex. Crim. App. 2000) for an explanation of the standards.

Appellant was charged in the indictment with intentionally causing the death of Fant Smart by shooting him with a deadly weapon while in the course of committing or attempting to commit the offense of burglary of the habitation of Fant Smart. The charge allowed the jury to convict appellant either 1) by acting with intent to promote or assist the commission of the offense and soliciting, encouraging, directing, aiding, or attempting to aid another person to commit the offense or 2) by committing one felony while attempting to carry out a conspiracy to commit another felony if the offense was committed in furtherance of the unlawful purpose and should have been anticipated. *See* TEX. PEN. CODE ANN. §7.02 (Vernon 2003). Appellant argues that there was no evidence that anyone other than Pugh entered the house with intent to commit a burglary of the home of Fant

3

Smart or that anyone else was in the house when Pugh shot and killed Smart. Thus, there was no evidence of any form of agreement to commit one felony.

To be convicted as a party to an offense, there must be evidence showing that at the time of the offense, the parties were acting together with each contributing some part towards the execution of their common purpose. *Wooden v. State,* 101 S.W.3d 542, 546 (Tex. App.–Fort Worth 2003, pet. ref'd); *Edwards v. State,* 956 S.W.2d 687, 690 (Tex. App.–Texarkana 1997, no pet.). The agreement, whether explicit or implicit, must have been made before or contemporaneously with the offense. *Barnes v. State,* 62 S.W.3d 288, 296 (Tex. App.–Austin 2001, pet. ref'd). In determining the guilt of a defendant as a party, the factfinder may look to events occurring before, during, and after commission of the crime, *Goff v. State,* 931 S.W.2d 537, 545 (Tex. Crim. App. 1996), *cert. denied,* 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997), and participation as a party may be inferred from circumstantial evidence. *Gant v. State,* 116 S.W.3d 124, 133 (Tex. App.–Tyler 2003, pet. ref'd); *Green v. State,* 839 S.W.2d 935, 944 (Tex. App.–Waco 1992, pet. ref'd); *Hill v. State,* 883 S.W.2d 765, 770 (Tex. App.–Amarillo 1994, pet. ref'd). Moreover, the cumulative force of all the incriminating evidence may be sufficient to warrant a conclusion of guilt. *Thomas v. State,* 915 S.W.2d 597, 600 (Tex. App.–Houston [14th Dist.] 1996, pet. ref'd). However, one does not become an accomplice through mere knowledge of a crime or the failure to disclose its commission. *Stevens v. State,* 820 S.W.2d 930, 934 (Tex. App.–Fort Worth 1991, pet. ref'd).

In this instance, appellant denied that she was present when Smart was killed or that she participated in any burglary of his house. She did admit that she cleaned up after

4

the murder, helped to load the victim into his own pickup truck, drove around in the victim's truck with the body in the bed of the truck, was present when the body was disposed of, fled the state with Pugh, and used money stolen from the victim and pawned items stolen from him.  However, she claimed she did those acts because she was afraid of Pugh.

Nevertheless, other evidence shows that 1) she and Pugh had previously talked of committing a robbery and had actually done so near College Station, Texas, 2) she had quit her job and was having to write hot checks to cover expenses, 3) she learned of the first burglary of Smart's house soon after its occurrence, and practiced shooting the guns that had been stolen in the burglary, 4) on January 6, appellant was told by Pugh that he was going to Smart's house to see what was in it, and she "had an idea" he was going to rob it,  5) after Pugh had  been to Smart's house, he showed her money he had taken, they counted out $250 in coins together, and hid it in her closet, 6) after doing so, Pugh told her he was returning to Smart's house and she did not ask him to return the stolen property, 7) later she cleaned up blood from Smart's house, had the idea to put a blanket under the body, returned to her own home several times while doing so to obtain cleaning materials and check on her children, and helped load the body into the truck, 8) appellant did not try to escape from Pugh although she had multiple opportunities to do so throughout the entire ordeal, 9) appellant gave a detailed description to police as to how the crime occurred even though she was allegedly not present, 10) appellant gave conflicting stories to the police with respect to her involvement, 11) the body had bruising consistent with the victim having been beaten before his death although that theory is inconsistent with appellant's version that Smart was only shot when he unexpectedly came home, 12) Pugh told his friend in Canyon, Texas, that "*we* were robbing a house and the guy walked in on us and [I] turned

5

around and shot him," 13) a cell mate testified that appellant told her "*we* were in the house when the teacher came in and surprised 'em," and 14) appellant's own daughter told officers that her mother was in the Smart house with Pugh when shots were heard. (Emphasis added).

From this evidence, a rational jury could have found, beyond reasonable doubt, that appellant participated in the burglary and murder of Smart. Thus, the conviction enjoys the support of legally sufficient evidence.

That appellant presented exculpatory evidence and evidence indicating that Pugh forced her to help clean the house after the murder did not obligate the jury to acquit her of the charges. Indeed, evidence of guilt may often be circumstantial, contradicted, and less than clear and unequivocal, such as that here. Yet, it is the task of the jury to determine what and who to believe. And, the jury is free to disbelieve appellant's testimony and evidence and believe that of the State. *See Hanson v. State,* 55 S.W.3d 681, 691-92 (Tex. App.–Austin 2001, pet. ref'd) (holding that the jury could disbelieve that the defendant had told his companion that he was "not doing nothing" when there was evidence that he had been told of a plan to rob the victim, carried a hammer which was one of the murder weapons, washed off a knife after the murder, took items from the house, and left town). And, when the evidence is viewed as a whole, we cannot say that it greatly preponderates against that supporting appellant's conviction. Nor can we conclude that the evidence of appellant's guilt, when weighed against the other evidence of record was so weak as to render the verdict manifestly unjust. Thus, the verdict also enjoys the support of factually sufficient evidence. *See Burdine v. State,* 719 S.W.2d 309, 315 (Tex. Crim. App. 1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987) (holding that the

defendant exhibited a prior understanding that a crime would occur by stating he felt that his co-actor "was going to start some trouble," the defendant suggested that they gag the victim and take him to the back of the trailer, the defendant moved the truck to load the stolen property, and after the murder, they traveled to another town, pawned a television, used the victim's ATM card and fled to another state).

### Issue Three - Extraneous Offense

In her third issue, appellant complains of the admission by the trial court of evidence that she had previously committed an unadjudicated armed robbery with Pugh. We overrule the issue.

On rebuttal, the State attempted to introduce the testimony of 1) Norma Nichols, who had resided with appellant and Pugh for a period of time, to the effect that she had heard them plan a robbery and that they reported to her they had committed a robbery, 2) an officer who interviewed appellant during which interview appellant admitted to participating in an armed robbery in Brazos County, and 3) a Brazos County officer regarding an aggravated robbery that took place within that county at that same time. The State contended that the evidence was relevant to motive, intent, plan, knowledge, and refutation of appellant's contention that she only participated in the current offense because she was afraid of Pugh. Appellant objected to its admission on the basis of Rule 404(b) and Rule 403 of the Texas Rules of Evidence. The court overruled the objections and admitted the evidence.

We review the trial court's ruling on the admission of the evidence for abuse of discretion. *Montgomery v. State,* 810 S.W.2d 377, 379 (Tex. Crim. App. 1991). And, so

7

long as the trial court's decision falls within the zone of reasonable disagreement, we cannot say that it abused its discretion. *Id.* at 380.

Next, evidence of an extraneous offense is relevant if it tends to establish some elemental or evidentiary fact or rebuts a defensive theory. *Brown v. State,* 96 S.W.3d 508, 511 (Tex. App.–Austin 2002, no pet.); *see also Moses v. State,* 105 S.W.3d 622, 626 (Tex. Crim. App. 2003) (holding that evidence may be admissible if it rebuts a defensive theory); Tex. R. EVID. 404(b) (holding that evidence of other crimes, wrongs or acts is admissible to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident).

Appellant contended both in statements given to police and in her testimony at trial that she did not know that Pugh was going to rob Smart and that she only helped him after the murder because she feared Pugh. The evidence of her participation with Pugh in a prior robbery not only illustrates that she worked in tandem with Pugh's criminal escapades in the past but also that she did it quite voluntarily. Indeed, she herself admitted that she waited outside of the convenience store in Brazos County to drive the couple away and that while she waited she applied mascara to at least one eye. The nonchalance exhibited while Pugh robbed the store tends to rebut any insinuation that she feared Pugh or was otherwise coerced into engaging in his criminal escapades. Consequently, we cannot say that any decision finding the evidence both relevant, an exception to Rule 404(b), and admissible under Rule 403 was outside the zone of reasonable disagreement.

### Issue Four - Hearsay Statement

Appellant argues in her fourth issue that the trial court erred in admitting the hearsay statement of her minor daughter. We overrule the issue.

8

Prior to the offer of the hearsay statement, the six-year-old child testified that she had never heard gunshots when her mother was away from the house. This statement differed from the statement given to a police officer and offered (at trial) through Officer Jimmy Casper as a prior inconsistent statement of the child. Furthermore, in the prior statement, the child disclosed that she had been in the house with her brother, became concerned because she could not find her mother, stepped outside, heard gunshots, and realized that her mother was still with Pugh at Smart's house.

A prior inconsistent statement is not hearsay. TEX. R. EVID. 801(e)(1)(A). And, to the extent that appellant contends before us that the State failed to comply with Texas Rule of Evidence 613 (regarding the admission of prior inconsistent statements), that ground went unmentioned below. So, because the objection below does not comport with that uttered here, it is waived. *Rodriguez v. State,* 955 S.W.2d 171, 177 (Tex. App.–Amarillo 1997, no pet.).

### *Issue Five - Photographs*

In her final issue, appellant claims the trial court erred in admitting, over her Rule 403 objection, four photographs of the deceased victim. We overrule the issue.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. And, whether the trial court erred in rejecting an objection founded upon Rule 403 depends upon whether it abused its discretion, *i.e.* whether the decision falls outside the zone of reasonable disagreement. This standard also applies to the admission of photographs. *Wyatt v. State,* 23 S.W.3d 18, 29 (Tex. Crim. App. 2000).

9

Next, pictures are generally admissible if verbal testimony of the matters depicted is also admissible, unless, of course, their probative value is outweighed by their prejudicial effect. *Ramirez v. State,* 815 S.W.2d 636, 647 (Tex. Crim. App. 1991). Furthermore, the trial court does not abuse its discretion in admitting photographs if they will help the jury to understand verbal testimony, such as technical language used by a medical doctor in describing injuries sustained. *Hernandez v. State,* 118 S.W.3d 469, 478 (Tex. App.–Eastland 2003, pet. ref'd).

The four photographs in question were all 4" by 6" pictures of the victim showing the wounds on his body. Appellant complains that Exhibit 35 shows the victim on a gurney with his hands bound behind his back. Appellant also complains that Exhibits 39, 46, and 47 depict the victim's head while he is lying on a gurney. Yet, the pictures about which appellant complains on appeal are not more gruesome than others depicting appellant on the gurney and to which no complaint was made. *See Youens v. State,* 742 S.W.2d 855, 862 (Tex. App.–Beaumont 1997, pet. ref'd). Additionally, two of the pictures are of the decedent's scalp and purport to depict scalp wounds. A trial court holding them to be of minimal emotional impact or of minimal distaste would fall within the zone of reasonable disagreement. That of the decedent lying with his arms tied depicts how the body was found and the effort which must have been taken by those who murdered him to either kill him or dispose of his body. And, the photo of the decedent's face depicts that he was beaten, which tends to contradict the evidence that he was only shot.

The fact that the body is shown after it has been moved from the position in which it was discovered does not render the photos inadmissible. *See Purtell v. State,* 761 S.W.2d 360, 371 (Tex. Crim. App. 1988) (holding that photographs showing the body after

having been moved from the position in which it was discovered were probative of the manner in which the deceased was killed as well as the condition of the body and the locations of the wounds).  Moreover, photographs of murder victims may be admissible to show the manner and means of death even if they merely corroborate other kinds of evidence. *Moreno v. State,* 1 S.W.3d 846, 857 (Tex. App.–Corpus Christi 1999, pet. ref'd). Finally, that a relevant picture may be gruesome alone is not necessarily justification to exclude it.  *Sonnier v. State,* 913 S.W.2d 511, 519 (Tex. Crim. App. 1995).  Given this and the propensity of the photos to not only evince the brutality of the crime but also the manner in which it actually occurred, we cannot say that the trial court's decision to reject Rule 403 as a basis to exclude them fell outside the zone of reasonable disagreement and constituted an abuse of discretion.

Accordingly, the judgment of the trial court is affirmed.


Per Curiam


Do not publish.


11