

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00026-CR

_____

CRYSTAL HEATH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th Judicial District Court
Hunt County, Texas
Trial Court No. 25944

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Shortly after a Hunt County robbery at gunpoint at which $500.00 was taken from Icle Mapps, Crystal Heath admitted to police that she had cash given to her by Antwan Davis, later shown to have been the individual who actually committed the robbery. Five hundred twenty dollars in cash was recovered from Heath's bra. From Heath's conviction of aggravated robbery with a deadly weapon[1] and her sentence of eleven years' imprisonment, Heath complains of insufficient evidence—as to her party status and as to her connection to the weapon—to support her conviction. She also asserts ineffective assistance of counsel. We affirm because (1) the evidence sufficiently shows Heath was a party to the robbery, (2) the evidence need not have shown that Heath wielded or knew about the weapon, and (3) ineffective assistance of counsel does not appear.

*(1)*    *The Evidence Sufficiently Shows Heath Was a Party to the Robbery*

In the direct aftermath of the robbery, Mapps followed Davis' car while calling the police. Shortly thereafter, Greenville Police Officer Randy Gray detained the vehicle Mapps reported having followed and matching the description given by Mapps.

Driving the detained car was Bryana Bankston, sitting in the front passenger seat was Heath, and sitting in the back seat was Davis, who matched Mapps' description of the robber. Bankston informed Gray that, during the pursuit by Mapps, Davis had opened the door. Thereafter, police discovered a BB pistol, with its orange muzzle "flag" removed, along the course

---

[1]*See* TEX. PENAL CODE ANN. §§ 29.02, 29.03 (West 2011).

2

the pursuit had taken. Heath initially refused to speak to the police. After being informed that she would be searched at the jail, Heath informed the officers that Davis had given her cash, which she had placed in her bra. The police recovered the cash from Heath's bra. At trial, Heath admitted she was in the vehicle and admitted the money was found in her bra.

Mapps reported that the perpetrator had sprayed him with pepper spray at the time of the robbery. The police discovered a bottle of pepper spray in the Bankston vehicle.

Heath denied involvement in the robbery. According to Heath, she had asked Bankston for a ride to the grocery store. Davis, who was fifteen at the time of the offense, had been "staying with" Heath and had asked to come along. According to Heath, Davis claimed that, to pay Heath's bills, Davis would get some money from his father, who lived at the Charlet Apartments. At Davis' instructions, the trio parked in front of the apartment complex. When Davis returned, Heath testified he was out of breath and told them "you can leave." Heath testified she did not think it unusual for Davis to be out of breath. According to Heath, she did not find out about the robbery until their car was stopped by the police. Heath denied encouraging Davis to commit the robbery and denied ever seeing the BB pistol. Heath admitted she had a chance to return the money.

The evidence at trial established that Davis used or exhibited a BB pistol and that a BB pistol is capable of causing serious bodily injury.

3

In evaluating the legal sufficiency of the charged offense, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

Evidentiary sufficiency should be measured against a "hypothetically correct" jury charge. *See Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). *Malik* controls "even in the absence of alleged jury charge error." *Gollihar*, 46 S.W.3d at 255.

A "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. The "hypothetically correct" jury charge

4

cannot completely rewrite the indictment, but such a charge need not "track exactly all of the allegations in the indictment." *Gollihar*, 46 S.W.3d at 253. If the essential elements of the offense are modified by the indictment, the modification must be included. *Id*. at 254. The hypothetically correct charge, however, "need not incorporate allegations that give rise to immaterial variances." *Id*. at 256.

The "'law' as 'authorized by the indictment' must be the statutory elements" of the offense charged "as modified by the charging instrument." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). The hypothetically correct jury charge must include both (1) allegations that form an integral part of an essential element of the offense, including allegations that are statutorily alternative manner and means, and (2) material variances. *Clinton v. State*, 327 S.W.3d 366, 368–69 (Tex. App.—Texarkana 2010, pet. granted); *see Gollihar*, 46 S.W.3d at 256. When determining whether a variance is material, we must consider two questions: "1) whether the indictment, as written, informed the defendant of the charge against him or her sufficiently to allow such defendant to prepare an adequate defense at trial, and 2) whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime." *Mantooth v. State*, 269 S.W.3d 68, 76 (Tex. App.—Texarkana 2008, no pet.).

A person is criminally responsible as a party to an offense if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). "A

5

defendant may not be held accountable as a party without some indication that they knew they were assisting in the commission of an offense." *Edwards v. State*, 956 S.W.2d 687, 691 (Tex. App.—Texarkana 1997, no pet.). More than mere presence of the defendant is required to establish participation in a criminal offense. *Stroman v. State*, 69 S.W.3d 325, 329 (Tex. App.—Texarkana 2002, pet. ref'd). Further, a defendant may be liable as a party even if the defendant is not present at the scene of the crime. *See Otto v. State*, 95 S.W.3d 282, 284 (Tex. Crim. App. 2003) (finding party liability under Section 7.02(a)(2) even though defendant not present at scene of crime). The jury may consider events that occurred before, during, and after the offense that demonstrate an understanding and common design. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (op. on reh'g). The agreement to act together in a common design can be proven by circumstantial evidence. *Id.* "The evidence must show that at the time of the offense the parties were acting together, each contributing some part towards the execution of their common purpose." *Cunningham v. State*, 982 S.W.2d 513, 520 (Tex. App.—San Antonio 1998, pet. ref'd).

The State introduced sufficient evidence that Heath was a party under Section 7.02(a)(2) of the Texas Penal Code. Among the connections were the identity of the Bankston car, the presence of pepper spray, the cash, the secretive location from which the cash was recovered, the recovered weapon, and Heath's behavior with police.

6

The record contains sufficient circumstantial evidence for the jury to conclude an understanding and common design existed. Gray testified the route the car took after leaving the crime scene was not consistent with Heath's story. The discovery of the money hidden in Heath's bra is an unusual circumstance from which the jury could reasonably conclude Heath knew about the robbery. A jury can disbelieve a witness, even when that witness' testimony is uncontradicted. *Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). As the trier of fact, the jury is the sole judge of the credibility of the witnesses and is free to believe or disbelieve all, part, or none of any witness' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Based on the circumstantial evidence, a rational jury could have disbelieved Heath's testimony and concluded a common design existed. The evidence is sufficient to support Heath's conviction, based on the law of parties, for aggravated robbery.

*(2)    The Evidence Need Not Have Shown that Heath Wielded or Knew About the Weapon*

As part of her argument, Heath argues that the State was bound by its allegation that Heath personally used or exhibited a deadly weapon. The indictment alleged:

> [HEATH] INDIVIDUALLY AND ACTING TOGETHER WITH BRYANA BANKSTON AND ANTWAN DAVIS AS PARTIES TO THE OFFENSE, DID INTENTIONALLY OR KNOWINGLY, WHILE IN THE COURSE OF COMMITTING THEFT OF PROPERTY AND WITH INTENT TO OBTAIN OR PERMANENTLY MAINTAIN CONTROL OF SAID PROPERTY THREATEN OR PLACE ICLE MAPPS IN FEAR OF IMMINENT BODILY INJURY OR DEATH, AND THE DEFENDANT USED OR EXHIBITED A DEADLY WEAPON, TO-WIT:   A BB PISTOL

7

Heath argues that the hypothetically correct jury charge would contain the State's allegation that she wielded the weapon herself. Because the evidence established that the person who used or exhibited the deadly weapon was Davis, Heath argues the evidence is insufficient. The State argues that the hypothetically correct jury charge would include an instruction of the law of parties and that the evidence is sufficient based on the law of parties. Should the hypothetically correct jury charge permit the application of the law of parties, Heath alternatively argues the evidence is insufficient because Heath did not know a deadly weapon had been used or exhibited.

Under the hypothetically correct jury charge, the State was not required to establish that Heath personally used or exhibited a deadly weapon. The law is well established that an indictment is not required to allege that the defendant acted as a party to the commission of the charged offense. *See, e.g.*, *Marable v. State*, 85 S.W.3d 287 (Tex. Crim. App. 2002). "When there is evidence that the defendant is guilty as a party, a trial court may charge the jury on the law of parties even if the indictment charges the defendant as a principal." *Miles v. State*, 259 S.W.3d 240, 244 (Tex. App.—Texarkana 2008, pet. ref'd). One of the stated justifications for the hypothetically correct jury charge was that "some important issues relating to sufficiency -- e.g. the law of parties and the law of transferred intent -- are not contained in the indictment." *Malik*, 953 S.W.2d at 239. Since *Malik*, the Texas Court of Criminal Appeals has reaffirmed that the hypothetically correct jury charge permits the jury to find the defendant guilty under the alternative theories of party liability. *See Vega v. State*, 267 S.W.3d 912, 915–16 (Tex. Crim.

App. 2008); *see also Hayes v. State*, 265 S.W.3d 673, 681 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

While the indictment alleges party liability concerning the elements of robbery and then alleges personal liability concerning the use or exhibition of a deadly weapon, we are not convinced, in the absence of a material variance, that the State is obligated to prove Heath personally used or exhibited the deadly weapon. As stated above, the State is not obligated to plead the law of parties. Unless Heath demonstrates that the variance is material, there is no reason not to follow the same rule when the State pleads party liability in part of the indictment, but not in all of the indictment. Such a hypertechnical requirement would be contrary to the purpose of the hypothetically correct jury charge. Heath does not claim that the State's allegation resulted in a material variance. Thus, the hypothetically correct jury charge would include criminal responsibility based on the law of parties. The State was not obligated to prove Heath personally used or exhibited a deadly weapon.

In the alternative, Heath contends the State failed to prove Heath knew a deadly weapon had been used or exhibited and that, therefore, the offense proven was simple robbery, not aggravated robbery. Heath does not provide any authority for the proposition that the State, in addition to proving Heath was a party to aggravated robbery, must also prove—as part of the elements of the offense—that Heath knew a deadly weapon was used or exhibited. The knowledge element urged by Heath appears to come from Article 42.12, Section 3g, of the Texas

9

Code of Criminal Procedure, under which a special deadly-weapon finding under Section 3g can affect eligibility for judge-ordered community supervision. We know of no requirement that knowledge of the deadly weapon be proven as part of the State's burden to prove, as an element of the offense of aggravated robbery, the use or exhibition of a deadly weapon. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (West Supp. 2010).

We, thus, overrule Heath's multifarious point of error attacking the sufficiency of the evidence.

*(3)     Ineffective Assistance of Counsel Does Not Appear*

Heath also contends that she received ineffective assistance of counsel because her attorney asked a question that led to her impeachment with extraneous offenses. On direct examination, Heath admitted she had been on community supervision at the time of the robbery for "[f]ailing to I.D." On redirect examination, Heath's trial counsel asked, "[O]ther than this have you ever been in trouble," and Heath responded, "No, sir." On re-cross examination, the State impeached Heath with other prior offenses. On second redirect, Heath testified she misunderstood her counsel's question. Heath contends her trial counsel's error constituted deficient performance and a reasonable probability of a different result exists because the case hinged on Heath's credibility.

We evaluate the effectiveness of counsel under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim.

App. 1986). To prevail on her claim, Heath must show (1) her appointed trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for trial counsel's errors, the result would have been different. *See Strickland*, 466 U.S. at 687–88. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). "It is well-settled that any claim of ineffective assistance must be firmly founded in the record." *Flowers v. State*, 133 S.W.3d 853, 857 (Tex. App.—Beaumont 2004, no pet.); *see Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

We are unwilling to conclude the performance of Heath's trial counsel was deficient. The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance." *Mallett*, 65 S.W.3d at 63. As argued by the State, "Trial counsel could not know that Appellant would lie in her answer, thereby opening the door for the State to cross examine her on misdemeanor priors." Further, trial counsel's reasons for the question do not appear in the record. "If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002).

A criminal defendant has a right to a fair trial, not a perfect one. "[A]n appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged

11

miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions." *Thompson*, 9 S.W.3d at 814; *Williamson v. State*, 104 S.W.3d 115, 120 (Tex. App.—Texarkana 2003, pet. ref'd). Trial counsel's performance did not fall below an objective standard of reasonableness. The record does not establish Heath received ineffective assistance of counsel.

For the reasons stated, we affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     August 1, 2011
Date Decided:       September 15, 2011

Do Not Publish