Donnie Lee WILLIAMSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–02–00033–CR.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 15, 2003.

Decided Feb. 25, 2003.

Discretionary Review Refused June 25, 2003.

Toby C. Wilkinson, Law Office of Toby C. Wilkinson, Greenville, for appellant.

Steve Tittle, Hunt County Asst. Dist. Atty., Greenville, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

OPINION

Opinion by Chief Justice MORRISS.

Donnie Lee Williamson was convicted of murder and sentenced to life imprisonment. On appeal, Williamson brings the following points of error: (1) the court erred by excluding testimony that the crime scene was a "crack house"; (2) the evidence was factually insufficient to support the conviction; and (3) Williamson received ineffective assistance of counsel.

On July 10, 2001, Marcus Dewayne Jones, Cedric Harris, Sharon Lewis, and Sheila Hoffman were all present at 1906 Sayle Street in Greenville, Texas. At approximately 1:30 p.m., Williamson entered the residence and shot Jones in the head. The autopsy revealed Jones died as a result of a gunshot wound to the head.

### Reputation of Residence

■ In his first point of error, Williamson contends the trial court erred by not allowing Officer Wesley Russell to testify regarding the reputation of the residence located at 1906 Sayle Street. We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996); *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex.Crim.App.1990). A trial court commits an abuse of discretion if its decision "is arbitrary, unreasonable, and without reference to any guiding rules and principles." *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997) (citing *Mercedes–Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex.1996)).

In the present case, Williamson contends Russell should have been allowed to testify that drug transactions were frequently conducted at the house where the crime was committed. However, during a

*sub rosa* hearing, Russell gave the following testimony:

Q. [Appellant]: Before July 10, 2001, were you familiar with the house located at 1906 Sayle Street?

A. [Russell]: I know where the house is at 1906, yes.

Q. [Appellant]: Okay. And had you worked cases that had occurred at that location?

A. [Russell]: No. Prior to the date I had not.

Q. [Appellant]: You'd never seen drug offense reports that occurred at that location?

A. [Russell]: I have not seen drug offense reports that occurred at that location.

Q. [Appellant]: Is the house at 1906 Sayle Street a reported drug house, either sales or use?

A. [Russell]: In the past there have been reports that there's been possible narcotics sales going on at that location.

Q. [Appellant]: Reports by who, neighbors?

A. [Russell]: Information—sometimes I get anonymous messages on the answering machine. I get some people who don't wish to be named or don't wish to be identified.

Q. [State]: Investigator Russell, have you ever seen drugs being bought at 1906 Sayle Street?

A. [Russell]: No.

Q. [State]: Have you ever seen drugs being sold at 1906 Sayle Street?

A. [Russell]: No.

Based on the above testimony and after reviewing the record, we find no evidence Russell had personal knowledge concerning drug use at the residence before the shooting. The only knowledge he had was derived from what others had told him, which would constitute inadmissible hearsay. *See* TEX.R. EVID. 802.[1] Therefore, because Russell did not have the requisite personal knowledge, *Fairow v. State*, 943 S.W.2d 895, 898 (Tex.Crim.App.1997), the trial court did not abuse its discretion by excluding Russell's testimony.

*Factual Sufficiency*

■ In his next point of error, Williamson contends the evidence is factually insufficient to support his conviction. In determining factual sufficiency, the reviewing court will examine the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996). "In conducting its factual sufficiency review, an appellate court reviews the fact finder's weighing of the evidence and is authorized to disagree with the fact finder's determination." *Clewis*, 922 S.W.2d at 133. This review, however, must employ appropriate deference to prevent an appellate court from substituting its judgment for that of the fact-finder, and any evaluation should

---

1. TEX.R. EVID. 803 provides certain exceptions to the hearsay rule, but character reputation regarding a location or structure is not among those exceptions. *See Mo. Pac. R.R. Co. v. Cooper*, 563 S.W.2d 233 (Tex.1978) (reputation of extra-hazardous nature of railroad crossing); *Rushing v. State*, 151 Tex. Crim. 221, 206 S.W.2d 252 (1947) (reputation of house as one where whiskey was sold); *Morgan v. City of Humble*, 598 S.W.2d 364 (Tex.Civ.App.-Houston [14th Dist.] 1980, no writ) (reputation of club as house of prostitution).

not substantially intrude on the fact-finder's role as the sole judge of the weight and credibility given to witness testimony. *Jones*, 944 S.W.2d at 648.

In the present case, the State produced testimony from two eyewitnesses, DNA evidence connecting Williamson to the scene of the crime, and testimony from two witnesses that Williamson confessed to the murder. Specifically, Harris testified Williamson entered the residence searching for Jones. Harris testified that Williamson entered the front bedroom, where Jones was located, and that Harris heard a gunshot. Williamson re-emerged from the bedroom brandishing a pistol, and he issued a warning to Harris and Lewis that, if they told anyone what happened, he would kill them.[2] After Williamson departed, Harris went to the front bedroom and found Jones lying on the floor in a pool of blood. Further, when the authorities arrested Williamson, they seized the black sandals he was wearing. Blood stains were detected on the sandals, and the sandals were sent to the Department of Public Safety Crime Laboratory in Garland for analysis. John Donahue testified that, based on DNA analysis, the blood found on Williamson's sandals was the victim's. Additionally, the State introduced testimony from Steven Johnson. Johnson testified that, several hours before the shooting, Williamson told Johnson of his plans to kill Jones. After the shooting, Johnson testified Williamson returned to Johnson's shop and admitted shooting Jones. The State also introduced testimony from Delois Williams, who testified Williamson admitted shooting Jones.

In rebuttal, Williamson introduced the testimony of Lowman Lowe. Lowe testified he was working on a friend's car in the driveway of a home across the street from the crime scene. He testified he heard a sound and thought the car backfired. Then he turned and looked over to 1906 Sayle Street and saw Lewis, Harris, and Hoffman exit the house and leave the area. Lowe also testified he did not see Williamson exit the residence, which was inconsistent with Harris' and Lewis' testimony that Williamson exited first. On appeal, Williamson argues that Lowe's testimony was sufficient to negate the State's evidence placing him at the crime scene. Williamson also contends the evidence was factually insufficient because the murder weapon was never recovered.

While Lowe's testimony may create some doubt about the credibility of Harris' and Lewis' testimony, this Court does not engage in a review of the weight and credibility given to a witness' testimony. *Id.* This Court must give deference to the fact-finder's role as the sole judge of the weight and credibility given to witness testimony. *Id.* Further, Lowe testified that he was in a hurry to get back to work and was not paying close attention and that he could have "missed something." As a result, Williamson has failed to present evidence that would render the verdict so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 129. Therefore, the evidence presented at trial was factually sufficient to support the conviction.

### Assistance of Counsel

■ In his third and fourth points of error, Williamson alleges he received ineffective assistance of counsel because his trial counsel "opened the door" to questions concerning his past criminal history and for failing to object during the State's closing argument. The standard for testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*,

---

**2.** The State elicited the same testimony from Lewis.

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail, an appellant must prove by a preponderance of the evidence (1) that his or her counsel's representation fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced his or her defense. *Id.; Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim.App.2000); *Rosales v. State*, 4 S.W.3d 228, 231 (Tex.Crim.App.1999). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

Our review of counsel's representation is highly deferential, with a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Id.* at 689, 104 S.Ct. 2052. This Court will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex.Crim.App.1979); *Harner v. State*, 997 S.W.2d 695, 704 (Tex. App.-Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the record. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999). As a result, the Texas Court of Criminal Appeals has often held that on direct appeal the record has not been sufficiently developed to enable an appellate court to adequately determine whether an appellant was provided ineffective assistance of counsel. *Id.* at 814–15.

In the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim.App.2001). We will not conclude the challenged conduct constitutes deficient performance unless the conduct was so outrageous no competent attorney would have engaged in it. *Id.; see Thompson*, 9 S.W.3d at 814.

■ Williamson contends the following exchange between his trial counsel and his previous employer resulted in ineffective assistance of counsel:

Q. [Appellant]: Did you consider him [Williamson] a dependable worker?

A. [Witness]: Yes, I sure do . . . .

Q. [Appellant]: And you were aware that Donnie has a past criminal record, is that right?

A. [Witness]: Yes. At the time I interviewed him and talked to him he explained all that to me.

Q. [Appellant]: And he told you he'd been to the penitentiary in the past, is that right?

A. [Witness]: Right. He sure did.

Q. [Appellant]: Do you trust him?

A. [Witness]: I always trusted him . . . .

Despite Williamson's motion in limine to prevent a discussion of his criminal history in the presence of the jury, the above line of questioning opened the door for the following:

Q. [State]: Mr. Kent, did Mr. Williamson tell you that he had been convicted of attempted murder?

A. [Witness]: I don't believe he told me when I first talked to him but it was on my records that he was.

Q. [State]: Mr. Kent, did Mr. Williamson tell you that he had been convicted of felony theft?

A. [Witness]: Donnie explained to me that he had been in trouble for several different things, but I really can't remember exactly what they were.

Q. [State]: Mr. Kent, did Mr. Williamson tell you he had been convicted of burglary of a motor vehicle?

A. [Witness]: No sir. I can't really remember.

Q. [State]: Did Mr. Williamson tell you he was on parole?

A. [Witness]: Yes, he did.

The record is void of any explanation for counsel's decision to open the door to Williamson's criminal history. Similarly, in *Thompson*, the court held the record had not been fully developed to a point where the court could adequately consider the issue on direct appeal. *Thompson*, 9 S.W.3d at 814. The court reasoned that, "an appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions." *Id.* While Williamson's counsel could have elicited testimony of Williamson's character without delving into his criminal history, this Court will not second-guess counsel's trial strategy. *Harner*, 997 S.W.2d at 704. Therefore, Williamson has failed to establish that his counsel's conduct fell below an objective standard of reasonableness.[3] Further, based on the evidence set forth above in the factual sufficiency analysis, Williamson has failed to show how counsel's actions so prejudiced his defense as to render counsel ineffective. Accordingly, Williamson's third point of error is overruled.

■ In his fourth point of error, Williamson complains his trial counsel was ineffective because she failed to object to the State's closing argument during the punishment phase, particularly the State's reference to prior sentences and its alleged suggestion those punishments were not enough. Specifically, Williamson contends failure to object to the following argument constituted ineffective assistance of counsel:

The State offered into evidence and there has been no objection [to] several pen packets.[4] These pen packets are here for your review. It will tell you how old Mr. Williamson is, 42 years old. If you read through them, it will show you when he received his first conviction, show you how many years in prison he was sentenced to, back in '79. Two years here, ten years there. They start to add up. And look where we still are. The system has not given Mr. Williamson enough time in prison. This offense, this murder, is the final one. This must be Ladies and Gentlemen.

Williamson's prior convictions were properly in evidence for enhancement purposes, and the State could properly argue that those convictions be considered by the jury in assessing punishment. *See* Tex. Pen.Code Ann. § 12.42 (Vernon Supp. 2003). Also, we do not read the quoted argument as suggesting that the earlier sentences were too lenient and that the jury should make up for the former lenience. In sum, the quoted portion of the State's argument was not objectionable. Thus, Williamson's counsel could not have been ineffective for failing to object. We overrule the fourth point of error.

---

**3.** However, like in *Thompson*, Williamson is not precluded from bringing a petition for writ of habeas corpus to fully develop the record and determine what, if anything, motivated trial counsel to open the door to the complained-of line of questioning. *Thompson*

*v. State*, 9 S.W.3d 808, 814–15 (Tex.Crim.App. 1999).

**4.** Williamson stipulated to the truthfulness of the penitentiary packets. *See Beck v. State*, 719 S.W.2d 205, 210 (Tex.Crim.App.1986).

For the reasons stated, we affirm the trial court's judgment.