In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00026-CR

                                                ______________________________

 

 

                                         CRYSTAL HEATH,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 354th
Judicial District Court

                                                              Hunt County, Texas

                                                            Trial
Court No. 25944

 

                                                           
                                       

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Shortly after a Hunt County robbery
at gunpoint at which $500.00 was taken from Icle Mapps, Crystal Heath admitted
to police that she had cash given to her by Antwan Davis, later shown to have
been the individual who actually committed the robbery.  Five hundred twenty dollars in cash was
recovered from Heath’s bra.  From Heath’s
conviction of aggravated robbery with a deadly weapon[1]
and her sentence of eleven years’ imprisonment, Heath complains of insufficient
evidence—as to her party status and as to her connection to the weapon—to
support her conviction.  She also asserts
ineffective assistance of counsel.  We
affirm because (1) the evidence sufficiently shows Heath was a party to the
robbery, (2) the evidence need not have shown that Heath wielded or knew about
the weapon, and (3) ineffective assistance of counsel does not appear.

(1)        The
Evidence Sufficiently Shows Heath Was a Party to the Robbery

            In the direct aftermath of the
robbery, Mapps followed Davis’ car while calling the police.  Shortly thereafter, Greenville Police Officer
Randy Gray detained the vehicle Mapps reported having followed and matching the
description given by Mapps.  

            Driving the detained car was Bryana
Bankston, sitting in the front passenger seat was Heath, and sitting in the
back seat was Davis, who matched Mapps’ description of the robber.  Bankston informed Gray that, during the
pursuit by Mapps, Davis had opened the door. 
Thereafter, police discovered a BB pistol, with its orange muzzle “flag”
removed, along the course the pursuit had taken.  Heath initially refused to speak to the
police.  After being informed that she
would be searched at the jail, Heath informed the officers that Davis had given
her cash, which she had placed in her bra. 
The police recovered the cash from Heath’s bra.  At trial, Heath admitted she was in the
vehicle and admitted the money was found in her bra.  

            Mapps reported that the perpetrator
had sprayed him with pepper spray at the time of the robbery.  The police discovered a bottle of pepper
spray in the Bankston vehicle.  

            Heath denied involvement in the
robbery.  According to Heath, she had
asked Bankston for a ride to the grocery store. 
Davis, who was fifteen at the time of the offense, had been “staying
with” Heath and had asked to come along. 
According to Heath, Davis claimed that, to pay Heath’s bills, Davis
would get some money from his father, who lived at the Charlet Apartments.  At Davis’ instructions, the trio parked in
front of the apartment complex.  When
Davis returned, Heath testified he was out of breath and told them “you can
leave.”  Heath testified she did not
think it unusual for Davis to be out of breath. 
According to Heath, she did not find out about the robbery until their
car was stopped by the police.  Heath denied
encouraging Davis to commit the robbery and denied ever seeing the BB pistol.  Heath admitted she had a chance to return the
money.  

            The evidence at trial established
that Davis used or exhibited a BB pistol and that a BB pistol is capable of
causing serious bodily injury.  

            In evaluating the legal sufficiency
of the charged offense, we review all the evidence in the light most favorable
to the trial court’s judgment to determine whether any rational jury could have
found the essential elements of the crime beyond a reasonable doubt.  Brooks
v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing Jackson v. Virginia, 443 U.S. 307, 319
(1979)); Hartsfield v. State, 305
S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref’d).  Our rigorous legal sufficiency review focuses
on the quality of the evidence presented. 
Brooks, 323 S.W.3d at 917
(Cochran, J., concurring).  We examine
legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the
jury “to fairly resolve conflicts in testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts.”  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318–19); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007)).

            Evidentiary sufficiency should be
measured against a “hypothetically correct” jury charge.  See
Gollihar v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).  Malik controls “even in the absence of
alleged jury charge error.”  Gollihar, 46 S.W.3d at 255.

            A “hypothetically correct” jury
charge is “one that accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State’s burden of proof or
unnecessarily restrict the State’s theories of liability, and adequately
describes the particular offense for which the defendant was tried.”  Malik,
953 S.W.2d at 240.  The “hypothetically
correct” jury charge cannot completely rewrite the indictment, but such a
charge need not “track exactly all of the allegations in the indictment.”  Gollihar,
46 S.W.3d at 253.  If the essential
elements of the offense are modified by the indictment, the modification must
be included.  Id. at 254.  The
hypothetically correct charge, however, “need not incorporate allegations that
give rise to immaterial variances.”  Id. at 256.

            The “‘law’ as ‘authorized by the
indictment’ must be the statutory elements” of the offense charged “as modified
by the charging instrument.”  Curry v. State, 30 S.W.3d 394, 404 (Tex.
Crim. App. 2000).  The hypothetically
correct jury charge must include both (1) allegations that form an integral
part of an essential element of the offense, including allegations that are
statutorily alternative manner and means, and (2) material variances.  Clinton
v. State, 327 S.W.3d 366, 368–69 (Tex. App.—Texarkana 2010, pet. granted); see Gollihar, 46 S.W.3d at 256.  When determining whether a variance is
material, we must consider two questions: 
“1) whether the indictment, as written, informed the defendant of the
charge against him or her sufficiently to allow such defendant to prepare an
adequate defense at trial, and 2) whether prosecution under the deficiently
drafted indictment would subject the defendant to the risk of being prosecuted
later for the same crime.”  Mantooth v. State, 269 S.W.3d 68, 76
(Tex. App.—Texarkana 2008, no pet.).

            A person is criminally responsible
as a party to an offense if “acting with intent to promote or assist the
commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense.” 
Tex. Penal Code Ann. § 7.02(a)(2)
(West 2011).  “A defendant may not be
held accountable as a party without some indication that they knew they were
assisting in the commission of an offense.” 
Edwards v. State, 956 S.W.2d
687, 691 (Tex. App.—Texarkana 1997, no pet.). 
More than mere presence of the defendant is required to establish
participation in a criminal offense.  Stroman v. State, 69 S.W.3d 325, 329
(Tex. App.—Texarkana 2002, pet. ref’d). 
Further, a defendant may be liable as a party even if the defendant is
not present at the scene of the crime.  See Otto v. State, 95 S.W.3d 282, 284
(Tex. Crim. App. 2003) (finding party liability under Section 7.02(a)(2) even
though defendant not present at scene of crime).  The jury may consider events that occurred
before, during, and after the offense that demonstrate an understanding and
common design.  Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (op. on
reh’g).  The agreement to act together in
a common design can be proven by circumstantial evidence.  Id.  “The evidence must show that at the time of
the offense the parties were acting together, each contributing some part
towards the execution of their common purpose.” 
Cunningham v. State, 982
S.W.2d 513, 520 (Tex. App.—San Antonio 1998, pet. ref’d).

            The State introduced sufficient
evidence that Heath was a party under Section 7.02(a)(2) of the Texas Penal
Code.  Among the connections were the
identity of the Bankston car, the presence of pepper spray, the cash, the
secretive location from which the cash was recovered, the recovered weapon, and
Heath’s behavior with police.

            The record contains sufficient
circumstantial evidence for the jury to conclude an understanding and common
design existed.  Gray testified the route
the car took after leaving the crime scene was not consistent with Heath’s
story.  The discovery of the money hidden
in Heath’s bra is an unusual circumstance from which the jury could reasonably
conclude Heath knew about the robbery.  A
jury can disbelieve a witness, even when that witness’ testimony is
uncontradicted.  Henderson v. State, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st
Dist.] 2000, pet. ref’d).  As the trier
of fact, the jury is the sole judge of the credibility of the witnesses and is
free to believe or disbelieve all, part, or none of any witness’
testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  Based on the circumstantial evidence, a
rational jury could have disbelieved Heath’s testimony and concluded a common
design existed.  The evidence is
sufficient to support Heath’s conviction, based on the law of parties, for
aggravated robbery.

(2)        The
Evidence Need Not Have Shown that Heath Wielded or Knew About the Weapon

            As part of her argument, Heath
argues that the State was bound by its allegation that Heath personally used or
exhibited a deadly weapon.  The
indictment alleged:

[HEATH]
INDIVIDUALLY AND ACTING TOGETHER WITH BRYANA BANKSTON AND ANTWAN DAVIS AS
PARTIES TO THE OFFENSE, DID INTENTIONALLY OR KNOWINGLY, WHILE IN THE COURSE OF
COMMITTING THEFT OF PROPERTY AND WITH INTENT TO OBTAIN OR PERMANENTLY MAINTAIN
CONTROL OF SAID PROPERTY THREATEN OR PLACE ICLE MAPPS IN FEAR OF IMMINENT
BODILY INJURY OR DEATH, AND THE DEFENDANT USED OR EXHIBITED A DEADLY WEAPON,
TO-WIT:  A BB PISTOL

 

Heath
argues that the hypothetically correct jury charge would contain the State’s
allegation that she wielded the weapon herself. 
Because the evidence established that the person who used or exhibited
the deadly weapon was Davis, Heath argues the evidence is insufficient.  The State argues that the hypothetically
correct jury charge would include an instruction of the law of parties and that
the evidence is sufficient based on the law of parties.  Should the hypothetically correct jury charge
permit the application of the law of parties, Heath alternatively argues the
evidence is insufficient because Heath did not know a deadly weapon had been
used or exhibited.

            Under the hypothetically correct
jury charge, the State was not required to establish that Heath personally used
or exhibited a deadly weapon.  The law is
well established that an indictment is not required to allege that the
defendant acted as a party to the commission of the charged offense.  See,
e.g., Marable v. State, 85 S.W.3d
287 (Tex. Crim. App. 2002).  “When there
is evidence that the defendant is guilty as a party, a trial court may charge
the jury on the law of parties even if the indictment charges the defendant as
a principal.”  Miles v. State, 259 S.W.3d 240, 244 (Tex. App.—Texarkana 2008, pet.
ref’d).  One of the stated justifications
for the hypothetically correct jury charge was that “some important issues
relating to sufficiency -- e.g. the law of parties and the law of transferred
intent -- are not contained in the indictment.” 
Malik, 953 S.W.2d at 239.  Since Malik,
the Texas Court of Criminal Appeals has reaffirmed that the hypothetically
correct jury charge permits the jury to find the defendant guilty under the
alternative theories of party liability. 
See Vega v. State, 267 S.W.3d 912, 915–16 (Tex. Crim. App. 2008); see also Hayes v. State, 265 S.W.3d 673,
681 (Tex. App.—Houston [1st Dist.] 2008, pet. ref’d).

            While the indictment alleges party
liability concerning the elements of robbery and then alleges personal
liability concerning the use or exhibition of a deadly weapon, we are not
convinced, in the absence of a material variance, that the State is obligated
to prove Heath personally used or exhibited the deadly weapon.  As stated above, the State is not obligated
to plead the law of parties.  Unless
Heath demonstrates that the variance is material, there is no reason not to
follow the same rule when the State pleads party liability in part of the
indictment, but not in all of the indictment. 
Such a hypertechnical requirement would be contrary to the purpose of
the hypothetically correct jury charge. 
Heath does not claim that the State’s allegation resulted in a material
variance.  Thus, the hypothetically
correct jury charge would include criminal responsibility based on the law of
parties.  The State was not obligated to
prove Heath personally used or exhibited a deadly weapon.

            In the alternative, Heath contends
the State failed to prove Heath knew a deadly weapon had been used or exhibited
and that, therefore, the offense proven was simple robbery, not aggravated
robbery.  Heath does not provide any
authority for the proposition that the State, in addition to proving Heath was
a party to aggravated robbery, must also prove—as part of the elements of the
offense—that Heath knew a deadly weapon was used or exhibited.  The knowledge element urged by Heath appears
to come from Article 42.12, Section
3g, of the Texas Code of Criminal Procedure,
under which a special deadly-weapon finding under Section 3g can affect
eligibility for judge-ordered community supervision.  We know of no requirement that knowledge of the
deadly weapon be proven as part of the State’s burden to prove, as an element
of the offense of aggravated robbery, the use or exhibition of a deadly
weapon.  See Tex. Code Crim. Proc.
Ann. art. 42.12, § 3g(a)(2) (West Supp. 2010).

            We, thus, overrule Heath’s
multifarious point of error attacking the sufficiency of the evidence.

(3)        Ineffective
Assistance of Counsel Does Not Appear

            Heath also contends that she
received ineffective assistance of counsel because her attorney asked a
question that led to her impeachment with extraneous offenses.  On direct examination, Heath admitted she had
been on community supervision at the time of the robbery for “[f]ailing to
I.D.”  On redirect examination, Heath’s
trial counsel asked, “[O]ther than this have you ever been in trouble,” and
Heath responded, “No, sir.”  On re-cross
examination, the State impeached Heath with other prior offenses.  On second redirect, Heath testified she
misunderstood her counsel’s question. 
Heath contends her trial counsel’s error constituted deficient
performance and a reasonable probability of a different result exists because
the case hinged on Heath’s credibility.

            We evaluate the effectiveness of
counsel under the standard enunciated in Strickland
v. Washington, 466 U.S. 668 (1984).  See Hernandez v. State, 726 S.W.2d 53,
56–57 (Tex. Crim. App. 1986).  To prevail
on her claim, Heath must show (1) her appointed trial counsel’s performance
fell below an objective standard of reasonableness, and (2) a reasonable
probability exists that, but for trial counsel’s errors, the result would have
been different.  See Strickland, 466 U.S. at 687–88.  “A reasonable probability is a probability
sufficient to undermine confidence in the outcome.”  Mallett
v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).  “It is well-settled that any claim of
ineffective assistance must be firmly founded in the record.”  Flowers
v. State, 133 S.W.3d 853, 857 (Tex. App.—Beaumont 2004, no pet.); see Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

            We are unwilling to conclude the
performance of Heath’s trial counsel was deficient.  The review of defense counsel’s
representation is highly deferential and presumes that counsel’s actions fell
within a wide range of reasonable professional assistance.”  Mallett,
65 S.W.3d at 63.  As argued by the State,
“Trial counsel could not know that Appellant would lie in her answer, thereby
opening the door for the State to cross examine her on misdemeanor
priors.”  Further, trial counsel’s
reasons for the question do not appear in the record.  “If counsel’s reasons for his conduct do not
appear in the record and there is at least the possibility that the conduct
could have been legitimate trial strategy, we will defer to counsel’s decisions
and deny relief on an ineffective assistance claim on direct appeal.”  Ortiz
v. State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002).

            A criminal defendant has a right to
a fair trial, not a perfect one.  “[A]n
appellate court should be especially hesitant to declare counsel ineffective
based upon a single alleged miscalculation during what amounts to otherwise
satisfactory representation, especially when the record provides no discernible
explanation of the motivation behind counsel’s actions.”  Thompson,
9 S.W.3d at 814; Williamson v. State,
104 S.W.3d 115, 120 (Tex. App.—Texarkana 2003, pet. ref’d).  Trial counsel’s performance did not fall
below an objective standard of reasonableness. 
The record does not establish Heath received ineffective assistance of
counsel.

            For the reasons stated, we affirm
the trial court’s judgment.

 

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

Date Submitted:          August 1, 2011

Date Decided:             September 15, 2011

 

Do Not Publish

 











[1]See Tex.
Penal Code Ann. §§
29.02, 29.03 (West 2011).