ACCEPTED
05-15-00379-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
9/22/2015 9:53:31 AM
LISA MATZ
CLERK

In the Court of Appeals for the
Fifth District of Texas at Dallas

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
9/22/2015 9:53:31 AM
LISA MATZ
Clerk

**JUSTIN DALE ROBERTS,**
　Appellant

§
§
§
§
v.　　　　　　　　　　§　　　　**No. 05-15-00379-CR**
§
**THE STATE OF TEXAS,**　§
　Appellee　　　　　　　§

Appealed from Cause Number 199-80668-2013 in the 416th Judicial District Court of Collin County, Texas, the Honorable Angela Tucker, Judge Presiding.

§ § §

*STATE'S BRIEF*

§ § §

**GREG WILLIS**
Criminal District Attorney
Collin County, Texas

**JOHN R. ROLATER, JR.**
Assistant Criminal District Attorney
Chief of the Appellate Division

*Oral argument is requested, but only if Appellant also requests oral argument.*

**ANDREA L. WESTERFELD**
Assistant Criminal District Attorney
2100 Bloomdale Rd., Suite 200
McKinney, Texas 75071
(972) 548-4323
FAX (214) 491-4860
State Bar No. 24042143
awesterfeld@co.collin.tx.us

**THOMAS ASHWORTH & CALLI BAILEY**
Assistant Criminal District Attorneys

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

INDEX OF AUTHORITIES ........................................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ........................................... 1

STATEMENT OF THE CASE ........................................................................ 1

STATEMENT OF FACTS .............................................................................. 1

    The business ........................................................................................... 1

    The fraud ................................................................................................. 3

    The defense ............................................................................................. 5

SUMMARY OF THE STATE'S ARGUMENTS ............................................... 7

STATE'S REPLY TO APPELLANT'S SOLE ISSUE
(EFFECTIVENESS OF REPRESENTATION) ................................................. 8

Appellant has not presented an adequate record to assess his complaint because he offered no evidence of counsel's strategy. It may be a valid trial strategy for Appellant to admit his past criminal history, even if it might not otherwise be admissible. Furthermore, Appellant has not shown the result of the proceeding would have been different because the admission could have enhanced rather than detracted from his credibility, such as showing his honesty or showing that he had no history of fraud-related offenses. Additionally, the result would not have been different because, even if Appellant's testimony was believed in its entirety, it still showed he was guilty of the offense.

    Standard of Review: ................................................................................ 8

    Relevant Facts: ........................................................................................ 9

    Argument & Authorities: ........................................................................ 10

PRAYER.............................................................................................15

CERTIFICATE OF SERVICE.............................................................16

CERTIFICATE OF COMPLIANCE ....................................................16

# INDEX OF AUTHORITIES

**Cases**

*Cannon v. State,*
  252 S.W.3d 342 (Tex. Crim. App. 2008) ...........................................................10

*Ex parte Ellis,*
  233 S.W.3d 324 (Tex. Crim. App. 2007) ...........................................................11

*Hernandez v. State,*
  988 S.W.2d 770 (Tex. Crim. App. 1999) .............................................................8

*Jackson v. State,*
  877 S.W.2d 768 (Tex. Crim. App. 1994) ..................................................... 10, 12

*Jaramillo v. State,*
  No. 04-02-00544-CR, 2003 WL 22491511
  (Tex. App.—San Antonio Nov. 5, 2003, no pet.)
  (not designated for publication) .........................................................................11

*Lopez v. State,*
  343 S.W.3d 137 (Tex. Crim. App. 2011) .............................................................9

*Ray v. State,*
  No. 12-10-00365-CR, 2012 WL 690317
  (Tex. App.—Tyler Feb. 29, 2012, no pet.)
  (not designated for publication) .........................................................................11

*Strickland v. Washington,*
  466 U.S. 668 (1984) .......................................................................................8, 10

*Thompson v. State,*
  9 S.W.3d 808 (Tex. Crim. App. 1999) ..............................................................8, 9

*West v. State,*
  Nos. 05-02-00976—77-CR, 2003 WL 1131367
  (Tex. App.—Dallas Mar. 13, 2003, no pet.)
  (not designated for publication) .........................................................................11

*Williamson v. State,*
104 S.W.3d 115 (Tex. App.—Texarkana 2003, pet. ref'd) ..................................11

# STATEMENT REGARDING ORAL ARGUMENT

The State does not believe oral argument will assist the Court in developing the issues in this case. However, if oral argument is granted to Appellant, the State requests the opportunity to respond.

# STATEMENT OF THE CASE

Justin Roberts ("Appellant") was charged by indictment with one count of engaging in organized criminal activity, one count of money laundering, and three counts of forgery of a contract or commercial instrument. CR 15. Appellant pleaded not guilty before a jury. 2 RR 110. The jury convicted him of all counts, and the trial court sentenced Appellant to four years in prison on Counts I and II and two years in the state jail on Counts III, IV, and V, to run concurrently. CR 77-81, 84, 87, 90; 4 RR 26-27, 56.

# STATEMENT OF FACTS

Appellant and two compatriots set up paperwork to falsely hold themselves out as partners in their employer's company and deposited thousands of dollars of checks made out to their employer in their false bank accounts.

*The business*

Jason Earnhardt was the owner of Ernhardt Restoration & Roofing, a roof repair company he and his wife founded in 2010. 2 RR 114-16. Their business

model involved tracking areas of hail damage and sending salesmen to knock on doors. 2 RR 116-17. In May 2012, Earnhardt Roofing employed approximately forty salesmen or project managers, who were responsible for contacting customers, inspecting roofs for damage, getting a contract signed, assisting the customer in filing insurance claims, and collecting checks from the customer before repair work actually began. 2 RR 118-19. Salesmen were paid a commission of whatever projects they completed. 2 RR 134-35. Employees were authorized to perform "side work"—small projects such as repairing a fence that a customer might want completed at the same time as their roof replacement—but those projects were still required to be submitted to the office. 2 RR 190.

In May 2012, Earnhardt hired Ron Robey as a project manager. 2 RR 128. In return, Robey recruited a number of additional employees, including Brian White and Appellant. 2 RR 137; 3 RR 22. But then Earnhardt noticed that money was going unaccounted for and contracts were made but never paid on. 2 RR 153. Then in August, the company's telephone and email accounts were flooded by communications from all over the country, making so many calls and emails that no business communications could take place. 2 RR 153. Earnhardt discovered that someone had been listing his business's contact information in Craigslist ads all over the country, using ads that would generate many responses such as advertising expensive items for free or job postings. 2 RR 155-56; 3 RR 89-90. The company

2

had to shut down completely for sixty days because of the flood of communications. 2 RR 156. Earnhardt learned that Robey, White, and Appellant were responsible for the Craigslist postings and obtained a recording in which Robey and White talked about the Craigslist postings. 2 RR 159; State's Exhibit 14.

Shortly after the police attempted to contact Robey, White, and Appellant about the Craigslist postings, in early September, Earnhardt's business was broken into. 2 RR 140; 3 RR 102. Nothing valuable was taken, only a filing cabinet and old computer towers with electronic records. 2 RR 140-41. But the records would be valuable to anyone trying to start a roofing company, and the loss of them crippled Earnhardt Roofing because they had no way of knowing what contracts had been signed. 2 RR 143. The break-in cost Earnhardt Roofing approximately $13.8 million dollars in lost revenue. 2 RR 143. Earnhardt was not able to keep the business afloat and had to shut down. 2 RR 143.

*The fraud*

During the police investigation into the Craigslist postings, Detective Finks discovered that Robey, White, and Appellant had filed an Assumed Name Certificate, also called a "Doing Business As" or "DBA," under the name of Earnhardt Roofing & Restoration. 3 RR 93; SX 8. One use of such a certificate is to allow a person to open a bank account under a company name. 3 RR 69.

3

Obtaining a certificate only required a person to apply and swear that they were the owners of the business, not provide any kind of proof of ownership. 3 RR 66-67. Robey, White, and Appellant filed their Earnhardt Roofing DBA in Collin County on July 30, 2012, while Earnhardt's company was still operating in Dallas County. 3 RR 69; SX8. They subsequently used the DBA to open two bank accounts under the name of Earnhardt Roofing at Woodforest National Bank and JPMorgan Chase Bank, listing themselves as partners of the company. 2 RR 171-72; SX 9, 10.

Robey, White, and Appellant then deposited the checks they received for Earnhardt Roofing customers into their own bank accounts rather than turning them over to Earnhardt. 2 RR 173-74. At least $38,000 in checks were deposited into the fictitious accounts rather than the genuine business, all during the time the genuine Earnhardt Roofing was unable to respond to or contact customers because of the Craigslist attack. 2 RR 176. Earnhardt never gave Robey, White, or Appellant permission to file the DBA or open any bank accounts under the Earnhardt Roofing name. 2 RR 128, 152, 157, 172. Homeowners Inderjit Sethi, Siva Sankaramanchi, and Jessica Carlton all testified that Appellant solicited business from them, wearing the Earnhardt Roofing uniform and claiming he worked for Earnhardt Roofing. 3 RR 38-40, 52-53, 71, 74, 78. All three researched the company online and with the Better Business Bureau and were reassured that it was a legitimate company. 3 RR 40-41, 53. They would not have done business

4

with Appellant but for verifying the company. 2 RR 41, 53. But all three homeowners' checks were deposited into Appellant's fictitious accounts. SX 9, 10.

*The defense*

Appellant testified at trial that he had been hired by Robey at Earnhardt Roofing and worked there for only four months. 3 RR 118-24, 138. He started having trouble getting paid by the company and having the company finish the jobs he had contracted. 3 RR 142-43, 147. He claimed that he, Robey, and White had a conversation with Earnhardt at a bar and as a result started a "business within a business" of Earnhardt Roofing. 3 RR 149-52. Appellant admitted that they filed a DBA under the name Earnhardt Roofing and opened two bank accounts under that name. 3 RR 151-52. He testified that the purpose of the business within a business was to do "side work and do our own business," taking care of anything not covered by the roofing insurance that the customer might want handled. 3 RR 153. But he also began completing the roofing jobs that he claimed Earnhardt Roofing was not completing in a timely manner and deposited those checks in the bank accounts he, Robey, and White had opened. 3 RR 154. Appellant admitted that he solicited jobs for his business wearing the Earnhardt Roofing uniform. 3 RR 169.

Appellant claimed that he was just "caught up in a bad situation" because Earnhardt mismanaged funds and did not take care of customers. 3 RR 157. He said he believed they had Earnhardt's permission to open the business within a

5

business and were supposed to pay Earnhardt fifty percent of any profits, but they never received any profits because Earnhardt called the police. 3 RR 151, 163. But he also admitted that it was possible Earnhardt did not know what they were doing. 3 RR 178.

## SUMMARY OF THE STATE'S ARGUMENTS

Appellant has not presented an adequate record to assess his complaint because he offered no evidence of counsel's strategy. It may be a valid trial strategy for Appellant to admit his past criminal history, even if it might not otherwise be admissible. Furthermore, Appellant has not shown the result of the proceeding would have been different because the admission could have enhanced rather than detracted from his credibility, such as showing his honesty or showing that he had no history of fraud-related offenses. Additionally, even if Appellant's testimony was believed in its entirety, it still showed he was guilty of the offense.

## STATE'S REPLY TO APPELLANT'S SOLE ISSUE
### (EFFECTIVENESS OF REPRESENTATION)

Appellant complains in his sole issue on appeal that counsel was ineffective for introducing evidence of his otherwise inadmissible criminal history. But Appellant has not presented an adequate record to assess his complaint because he offered no evidence of counsel's strategy. It may be a valid trial strategy to offer even otherwise inadmissible evidence. Furthermore, Appellant has not shown the result of the proceeding would have been different because the alleged error could have enhanced rather than detracted from his credibility, such as showing his honesty or showing that he had no history of fraud-related offenses. Additionally, even if Appellant's testimony was believed in its entirety, it still showed he was guilty of the offense.

## *Standard of Review:*

Appellant bears the burden of establishing his ineffective assistance of counsel claim under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). He must establish that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687-88. To succeed, Appellant must establish both prongs of the *Strickland* test by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

The review of defense counsel's actions is highly deferential and presumes that counsel's actions fell within the wide range of professional competence. *Lopez v. State,* 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Counsel's deficiency must be shown clearly on the record, not through retrospective speculation. *Id.* Appellant bears the burden of proof by a preponderance of the evidence. *Thompson*, 9 S.W.3d at 814. It is not sufficient if Appellant merely shows, through the benefit of hindsight, that counsel's actions were questionable. *Lopez,* 343 S.W.3d at 143. The reviewing court must consider the totality of counsel's representation and the circumstances of each case. *Id.*

### *Relevant Facts:*

At the beginning of Appellant's testimony during the guilt/innocence phase, counsel elicited that he had a prior criminal history. 3 RR 116. Specifically, Appellant admitted that he pleaded guilty in Georgia to felony possession of a controlled substance after self-medicating a work injury with an unprescribed muscle relaxant and successfully completed probation. 3 RR 116-17. He also testified to receiving a misdemeanor conviction in Collin County for driving while intoxicated. 3 RR 117.

Following Appellant's conviction, his trial counsel filed a motion for new trial. CR 93. After current counsel was appointed, Appellant moved to withdraw the first motion and filed a subsequent motion for new trial, alleging trial counsel's

ineffectiveness. CR 106, 114, 128. Appellant attached his own affidavit to the motion, but he did not obtain an affidavit from trial counsel or request a hearing. CR 114, 128. The trial court denied the motion in a docket entry. CR 14.

### *Argument & Authorities:*

Appellant has not met his burden of proving he received ineffective assistance of counsel because he has not presented an adequate record for the Court to review his claim and accordingly has not shown either that his counsel's representation was deficient or that he was prejudiced by counsel's alleged errors. *See Strickland*, 466 U.S. at 686-88. A reviewing court cannot determine that trial counsel was ineffective where there was no record of his reasoning. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

Here, the record is not adequate to evaluate Appellant's claim. Appellant complains that counsel was ineffective only for introducing evidence of his criminal history. Appellant's Brief at 13-14. But the record does not reflect any of counsel's reasoning for doing so. Counsel was never given an opportunity to explain his actions, including whether he had a strategic purpose for introducing Appellant's criminal history. Thus, counsel could only be found ineffective if there could be no conceivable strategic reason for his actions. *See Cannon v. State,* 252 S.W.3d 342, 350 (Tex. Crim. App. 2008).

But it is not necessarily defective representation to introduce even otherwise inadmissible evidence of a defendant's criminal history. In *Ex parte Ellis,* the Court of Criminal Appeals held that counsel had a sound strategic reason for offering evidence of the defendant's prior robbery conviction and murder charge. 233 S.W.3d 324, 334-36 (Tex. Crim. App. 2007). In *Ellis*, counsel used evidence of the defendant's criminal history to show that he had not been involved in any previous drug-related crimes and thus was less likely to have possessed the drugs than his co-defendant with a lengthy drug-related history. *Id.* This Court has also found that having the defendant admit to his criminal history was a way of demonstrating candor to the jury and could be a strategic reason to introduce prior criminal history. *West v. State,* Nos. 05-02-00976—77-CR, 2003 WL 1131367, at *2 (Tex. App.—Dallas Mar. 13, 2003, no pet.) (not designated for publication). Additionally, the *West* court concluded that the fact that the evidence might not be admissible "at the first instance" was irrelevant because the defense attorney "had to plan for the event that appellant opened the door to these convictions." *Id.* Other courts have similarly found that a trial attorney may have a strategic reason for introducing or opening the door to a defendant's criminal history. *See Williamson v. State,* 104 S.W.3d 115, 120 (Tex. App.—Texarkana 2003, pet. ref'd); *Ray v. State,* No. 12-10-00365-CR, 2012 WL 690317, at *4 (Tex. App.—Tyler Feb. 29, 2012, no pet.) (not designated for publication); *Jaramillo v. State,* No. 04-02-

00544-CR, 2003 WL 22491511, at *1 (Tex. App.—San Antonio Nov. 5, 2003, no pet.) (not designated for publication).

Thus, there are valid strategic reasons why a reasonable defense attorney may choose to admit even otherwise inadmissible criminal history. Counsel may have been trying to show that Appellant had no history of fraud in order to support his claim that he was merely mistaken about whether he had permission to open his "business within a business." Counsel also may have been trying to show Appellant was honest about admitting his mistakes. Indeed, counsel could have been afraid that Appellant might inadvertently open the door to evidence of his criminal history, and revealing that history from the beginning could have looked more honest to the jury. Without knowing counsel's reasoning in the instant case, this Court cannot conclude that he was acting deficiently. *See Jackson*, 877 S.W.2d at 771.

Additionally, Appellant has not shown that the result of the proceeding would have been different but for his attorney's alleged error. He argues that the criminal history evidence was necessarily damaging because the case amounted to a determination of his credibility versus Earnhardt's. Appellant's Brief at 14. But as the *West* court concluded, discussing Appellant's criminal history even when he was not required to could show candor to the jury and might be considered a positive influence on his credibility rather than a negative. And as in *Ellis*, the fact

that none of Appellant's prior history involved fraud or theft could also have contributed to the jury believing Appellant's story that he was merely mistaken about having permission, not that he was intentionally trying to defraud or cheat Earnhardt.

Appellant also cannot show that any damage to his credibility from the introduction of his criminal history affected the result of the proceeding when his own testimony showed he was guilty of the charged offenses. Appellant claimed they had Earnhardt's permission only to do "side jobs" and their own business, things not connected to the insurance coverage that the customer might want done. 3 RR 153. Appellant then admitted that he had accepted payment for regular roof repair jobs that he had solicited as part of Earnhardt Roofing, not "side jobs."[1] 3 RR 154. Appellant claimed he was justified in doing so because he was the one actually completing the jobs when Earnhardt was mismanaging the business, not because he had permission to do so. 3 RR 154. Thus, even if the jury had believed Appellant's testimony about having permission to set up a franchise-type business, he admitted that he went beyond the scope of that permission to complete and accept payment for Earnhardt Roofing's own contracts. His own testimony showed

---

[1] Indeed, the three roofing contracts introduced into evidence were all signed before Appellant, Robey, and White filed the DBA for their "business within a business," so they were indisputably customers of the original Earnhardt Roofing. SX 8, 11-13.

13

he was guilty, and thus any potential damage to his credibility by his criminal history did not have an impact on the verdict.

Because the record is not adequate to show that counsel's representation was deficient and Appellant has not shown the result of the proceeding would have been different but for the alleged error, Appellant has not met his burden of proving he received ineffective assistance of counsel. His sole error should be overruled.

## **PRAYER**

Appellant's trial was without prejudicial error. The State prays that Appellant's convictions and sentences be affirmed.

Respectfully submitted,

**GREG WILLIS**
Criminal District Attorney
Collin County, Texas

**JOHN R. ROLATER, JR.**
Assistant Criminal District Attorney
Chief of the Appellate Division

/s/ Andrea L. Westerfeld
**ANDREA L. WESTERFELD**
Assistant Criminal District Attorney
2100 Bloomdale Rd., Suite 200
McKinney, TX 75071
(972) 548-4323
FAX (214) 491-4860
State Bar No. 24042143
awesterfeld@co.collin.tx.us

## CERTIFICATE OF SERVICE

A true copy of the State's brief has been electronically served on counsel for Appellant, Franklyn Mickelsen, on this, the 22nd day of September, 2015.

/s/ Andrea L. Westerfeld
Andrea L. Westerfeld

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limitations in Texas Rule of Appellate Procedure 9.4(i)(2). In reliance on the word count of the computer program used to prepare this brief, the undersigned attorney certifies that this brief contains 2,743 words, exclusive of the sections of the brief exempted by Rule 9.4(i)(1).

/s/ Andrea L. Westerfeld
Andrea L. Westerfeld